❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>2003 Chevrolet Impala with Wisconsin license plate ANF-3605; dark blue<br>2005 Acura TL with Wisconsin license plate ARX-5650; black 2017<br>Volkswagen Sedan with Wisconsin license plate ARE-7442; and Gray<br>Nissan Rouge with Wisconsin Brewer license plate MENMY2, (collectively<br>"TARGET VEHICLES"), as further described in Attachment A2. | )<br>)<br>)<br>)<br>)<br>)<br>) |
| | Case<br>No.23-810M(NJ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 1/19/2023 _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ____Hon. Nancy Joseph____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued: 1/5/2023 @ 1:35 p.m. _____

*Judge's signature*

City and state:   Milwaukee, Wisconsin _____

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

---

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A2

### Property to Be Searched

The properties to be searched pursuant to this warrant are (1) 2003 Chevrolet Impala with Wisconsin license plate ANF-3605; (2) dark blue 2005 Acura TL with Wisconsin license plate ARX-5650; (3) black 2017 Volkswagen Sedan with Wisconsin license plate ARE-7442; and (4) Gray Nissan Rouge with Wisconsin Brewer license plate MENMY2 (collectively "**TARGET VEHICLES**").

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

All records, information, and items relating to violations of 21 U.S.C. §§ 841(a)(1), 843 and 846,

between November 1, 2021, to present including:

    a.  Evidence of the crime described above;

    b.  Tools associated with drug trafficking, to include plastic bags, scales, duffel bags, and money counters;

    a.  Preparatory steps taken in furtherance of that crime;

    b.  Evidence of the existence, scope, or overt acts in furtherance of a conspiracy;

    c.  Evidence of motive, intent, or knowledge of the crime described above;

    d.  Evidence of the location, whereabouts, and patterns of travel of members of the BROOKSHIRE DTO;

    e.  All bank records, checks, credit card bills, account information, and other financial records;

    f.  Financial records, documents, statements, or other evidence of control of bank or other financial accounts and investment funds;

    g.  Lists of drug customers and related identifying information;

    h.  Types, amounts, and prices of drugs trafficked, as well as dated, places, and amounts of specific transactions;

    i.  Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    j.  Indicia of residency;

    k.  Safes, vaults, or lock boxes used to store proceeds or records from these crimes;

    l.  U.S. Currency;

    m.  Evidence indicating how and when electronic devices were accessed or used, to determine the chronological and geographic context of access, use, and events relating to the crime under investigation; and

n. Cellular telephones and all electronic storage areas on the device including stored telephone numbers, recently called numbers list, text messages, digital audio and or video recordings, pictures, settings, and any other user defined settings and/ or data.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

During the execution of the search of the locations or person described in Attachments A, law enforcement personnel are authorized (1) to press the fingers (including thumbs) of any individuals found at the **TARGET LOCATION** or the **TARGET VEHICLES** to the fingerprint sensor ("Touch ID") and (2) to present the face of any individuals found at the **TARGET LOCATION** or the **TARGET VEHICLES** to the facial recognition sensor, such as a camera, ("Face ID") of the device found at the Target Location for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

Note: The government will attempt to retrieve and copy all data from computers found at the location to be searched without physically removing said computers. If occupants of the premises are unwilling to cooperate with the agent(s) regarding the operation of an on-site computer system(s), and/or it appears that there is/are data security devices involved, or the computer system utilizes unusual or proprietary equipment, the computer system may be seized, along with the proprietary equipment. If the agent determines that the volume of material found on the premises is voluminous in size, and/or for any technical reason the agent(s) on the scene

cannot search for or image/copy the information found on the premises, the computer system(s) and media may be seized.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>2003 Chevrolet Impala with Wisconsin license plate ANF-3605; dark blue 2005 Acura TL with Wisconsin license plate  ARX-5650; black 2017 Volkswagen Sedan with Wisconsin license plate ARE-7442; and Gray Nissan Rouge with Wisconsin Brewer license plate MENMY2, (collectively "TARGET VEHICLES"), as further described in Attachment A2. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )  Case<br> No.23-810M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 843 and 846 | Conspiracy to distribute and to possess with intent to distribute N-phenyl-N-[ 1-(2-phenylethyl)-4-piperidnyl] propanamide (fentanyl), and use of a communication facility to facilitate the distribution of a controlled substance. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
NICK STACHULA (Affiliate)  Digitally signed by NICK STACHULA (Affiliate)
Date: 2023.01.04 13:02:34 -06'00'

*Applicant's  signature*

DEA TFO Nick Stachula

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date: 1/5/2023

*Judge's signature*

City and state:  Milwaukee, Wisconsin          Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT
## AND CRIMINAL COMPLAINT

I, Nick Stachula, being first duly sworn, hereby depose and make this affidavit in support

of:

(A) a complaint seeking arrest warrant naming Leonard BROOKSHIRE (DOB

XX/XX/1978), Yvonne M. ECHOLS (DOB XX/XX/1979) and Brittany BREWER

(DOB XX/XX/1991); and

(B) an application for a search warrant to seek evidence of illegal possession and

distribution of controlled substances, and conspiracy to do the same, in violation of Title 21, United

States Code, Sections 841 and 846. The place to be searched pursuant to this warrant is 3218 West

Oriole Drive Milwaukee, WI (**TARGET LOCATION**) **(ATTACHMENT A1)** and the following

vehicles associated with the **TARGET LOCATION**, (1) 2003 Chevrolet Impala with Wisconsin

license plate ANF-3605; (2) dark blue 2005 Acura TL with Wisconsin license plate  ARX-5650;

(3)  black 2017 Volkswagen Sedan with Wisconsin license plate ARE-7442**;** and (4) Gray Nissan

Rouge with Wisconsin Brewer license plate MENMY2 (collectively "**TARGET VEHICLES"**)

**(ATTACHMENT A2)** (collectively "Attachments A").

## I.  AGENT BACKGROUND AND INFORMATION

1. I am a Detective with the City of West Allis Police Department and have been a

sworn law enforcement officer for 23 years. I am currently assigned to the North Central High

Intensity Drug Trafficking Area (HIDTA) – Drug Gang Task Force. Since January of 2016, I have

been a Task Force Officer with the United States Department of Justice, Drug Enforcement

Administration (DEA).

2. As part of my duties as a federal law enforcement officer, I investigate criminal

violations relating to narcotics trafficking offenses, including criminal violations of the Federal

Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances. I am familiar with various methods of smuggling and trafficking narcotics and other controlled substances and the proceeds from sale of such substances. I am also familiar with methods used to evade detection of both the controlled substances and the proceeds from their sale that are used by drug traffickers.

3.     I have received training in the area of narcotics investigations, money laundering, financial investigations, and various methods which drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of narcotics laws.

4.     I have participated in investigations that have led to the issuance of search warrants involving violations of narcotic laws. These warrants involved the search of locations including: residences of targets, their associates, and relatives, "stash houses" (houses used as drug/money storage locations), storage facilities, bank safe deposit boxes, cellular/camera phones, and computers. Evidence searched for and recovered in these locations has included controlled substances, records pertaining to the expenditures and profits realized from narcotics trafficking, monetary instruments and various assets that were purchased with the proceeds of the drug trafficking.

5.     In addition, through training, experience, and discussions with other experienced agents:

     a.  I have learned about the manner in which individuals and organizations distribute controlled substances;

b.  I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, and crack cocaine.  I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale.  I know the street values of different quantities of the various controlled substances;

c.  I am familiar with the coded language utilized over the telephone to discuss drug trafficking and know that the language is often limited, guarded, and coded.  I also know the various code names used to describe controlled substances;

d.  I know drug dealers often put telephones in the names of others (nominees) or obtain pre-paid cellular telephones from companies where no subscriber name or address is required to distance themselves from telephones that they use to facilitate drug distribution.  Because drug traffickers go through many telephone numbers, they often do not pay final bills when they are done using a telephone number and then are unable to put another line in the name of that subscriber;

e.  I know large-scale drug traffickers often purchase and/or title their assets in fictitious names, aliases or the names of relatives, associates, or business entities to avoid detection of these assets by government agencies.  I know that even though these assets are in names other than the drug traffickers, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them;

f.  I know large-scale drug traffickers must maintain on-hand, large amounts of U.S. currency to maintain and finance their ongoing drug business;

g.  I know it is common for drug traffickers to maintain books, records, receipts, notes, ledgers, airline tickets, receipts relating to the purchase of financial instruments and/or the transfer of funds and other papers relating to the transportation, ordering, sale, and distribution of controlled substances.  That the aforementioned books, records, receipts, notes, ledgers, etc., are maintained where the traffickers have ready access to them;

h.  I know it is common for large-scale drug traffickers to secure contraband, proceeds of drug sales and records of drug transactions in secure locations within their residences, their businesses and/or other locations over which they maintain dominion and control, for ready access and to conceal these items from law enforcement authorities or rival drug traffickers.  These secure locations include,

3

but are not limited to, safes, briefcases, purses, locked filing cabinets, and hidden storage areas in natural voids of a residence;

i. I know it is common for persons involved in large-scale drug trafficking to maintain evidence pertaining to their obtaining, securing, transfer, concealment, and/or expenditure of drug proceeds, such as currency, financial instruments, precious metals and gemstones, jewelry, books, records of real estate transactions, bank statements and records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys and money wrappers. These items are maintained by the traffickers within residences (including attached and unattached garages, and outbuildings), businesses or other locations over which they maintain dominion and control;

j. I know large-scale drug traffickers often use electronic equipment such as telephones (land-lines and cell phones), computers, telex machines, facsimile machines, currency counting machines and telephone answering machines to generate, transfer, count, record and/or store the information described in the items above, as well as conduct drug trafficking activities;

k. I know when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize the following methods, including, but not limited to: domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses that generate large quantities of currency;

l. I know drug traffickers commonly maintain addresses or telephone numbers in books or papers that reflect names, addresses and/or telephone numbers of their associates in the trafficking organization;

m. I know drug traffickers take or cause to be taken photographs of themselves; their associates, their property, and their drugs. These traffickers usually maintain these photographs in their possession;

n. I know a "controlled buy" (and/or controlled contact) is a law enforcement operation in which an informant purchases drugs from a target. The operation is conducted using surveillance, usually audio and video taping equipment, and pre-recorded buy money. When an informant is used, he/she is searched for contraband, weapons, and money before the operation. The informant is also

4

wired with a concealed body recorder and monitoring device. When the transaction is completed, the informant meets case agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents. The informant is again searched for contraband, weapons, and money. Additionally, all telephone calls made by the informant while under the direction and control of case agents are recorded; and

o. During the course of residential searches, I and other agents have also found items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the subject premises. Such identification evidence is typical of the articles people commonly maintain in their residences, such as canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, and keys.

6. This affidavit is based upon my personal knowledge and upon information reported to me by other federal and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

7. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

8. Because this affidavit is submitted for the limited purpose of securing a complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only facts that I believe are sufficient to establish probable cause.

9. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that that between November 2021 and present possible crimes Conspiracy to Distribute and Conspiracy to Possess with Intent to Distribute N-phenyl-N- [ 1- ( 2-

5

phenylethyl ) -4-piperidinyl ] propanamide (fentanyl), a Schedule II controlled substance, in

violation of Title 21, United States Code, Sections 841(a)(1) 841(b)(1)(A), and 846 and Unlawful

Use of a Communication Facility (including the mails) to Facilitate the Distribution of a Controlled

Substance, in violation of Title 21, United States Code Sections 843(b), have been committed by

Leonard BROOKSHIRE (DOB XX/XX/1978), Jacque S. HERNANDEZ (DOB XX/XX/1978),

Yvonne M. ECHOLS (DOB XX/XX/1979), Brittany BREWER (DOB XX/XX/1991) and others

known and unknown to case agents, in the State and Eastern District of Wisconsin.

## II.   PROBABLE CAUSE

### A. Identified of the BROOKSHIRE Drug Trafficking Organization and Parcels Associated

#### a.   Subject Parcel 1

9.      On July 21, 2022, the High Intensity Drug Trafficking Area Drug Gang Task Force,

initiated a drug investigation involving the trafficking of fentanyl from Chandler, Arizona to the

West Allis, Wisconsin via the United States Postal Service (USPS). As a result of this investigation

the United States Postal Inspection Service (USPIS) were monitoring parcels from Phoenix,

Arizona and the surrounding zip codes being sent to the Milwaukee Metropolitan Area.

10.     In September 2022 USPIS located a suspicious parcel with USPS Priority Mail

Express parcel number EI387224872US (Subject Parcel 1) suspected to be linked to an on-going

fentanyl investigation where fentanyl pills were being mailed via USPS from Chandler, Arizona

to West Allis, Wisconsin. USPIS advised that the parcel was a Priority Mail Express from "Richard

Larcy" of XX35 South 38th LN, Phoenix, AZ 85041" to "Mr. Boykin" at XX16 North 14th Street

Milwaukee, WI 53209.  The parcel was scheduled to be delivered on September 16, 2022. USPIS

located an Internet Protocol (IP) address of 216.9.178.191 by Orbitel Communications related to

Subject Parcel 1.

6

11.     USPIS noted that after an arrest by case agents in the Chandler, Arizona fentanyl pill investigation on July 21, 2022 the addresses XX25 North 91st Street. Milwaukee, WI, XX33 East Pleasant Street, # 207 Milwaukee, WI, and XX16 North 14th Street Milwaukee, WI consistently started receiving USPS parcels from the Phoenix, Arizona area. The parcels were being received on a weekly basis since August of 2022. Case agents were aware that the Chandler, Arizona source of fentanyl pills was alerted to an arrest of the West Allis co-conspirator in that investigation, so intitially case agents believed these parcels might be related.

12.     On September 16, 2022, at approximately 11:11 a.m. case agents delivered the Subject Parcel 1 to the address of XX16 North 14th Street Milwaukee, WI 53209. Case agents were in the area and conducted surveillance on the USPS Priority Mail Express parcel delivered to XX16 North 14th Street Milwaukee, WI 53209. At approximately 11:25 a.m. case agents observed a black 2010 Chevrolet Traverse bearing Wisconsin license plate AMW-2924 (Traverse). Case agents reviewed Department of Transportation (DOT) records and learned the Traverse was registered to Jamesha D. CRAWFORD (DOB XX/XX/1990) of XX56 North 14th Street, Milwaukee, WI, 0.2 miles south of the delivery location of XX16 North 14th Street, Milwaukee, WI. The Traverse pulled up and parked in front of XX16 North 14th Street, Milwaukee, WI. Case agents observed a female, later determined to be CRAWFORD through DOT records, exit the driver seat, walk up to the front porch, and retrieve the Subject Parcel 1. CRAWFORD was on her cell phone and appeared to be reading the parcel label to someone on the cell phone (Figure 1). CRAWFORD was ultimately followed back to her residence of XX56 North 14th Street, Milwaukee, WI with Subject Parcel 1.



(Figure 1)

13.     USPIS obtained video surveillance footage from September 15, 2022, of USPS Laveen, Arizona Office related to the mailing of Subject Parcel 1. The sender of the USPS Subject Parcel 1 was later identified as Leonard BROOKSHIRE (DOB XX/XX/1978) through DOT photo (Figure 2).



(Figure 2)

   **b. Subject Parcel 2**

14.     On September 29, 2022, information was obtained from USPIS that a USPS parcel with tracking number 9505511037712271424604 was sent from Cashion, Arizona to the XX50A North 28th Street, Milwaukee, WI (Subject Parcel 2).   The IP address of 216.9.178.191 was checking Subject Parcel 2.  This is the same IP address used in Subject Parcel 1, which was mailed to XX16 North 14th Street Milwaukee, WI 53209 on September 16, 2022.  In addition, IP address 108.76.222.210 and 2600.1700: b0d0:2e90: was also being used to check the mailing of Subject

8

Parcel 2.

15.     Subject Parcel 2 had a handwritten label addressed from "Brayan Ramirez" XX35 West Clarendon Avenue, Phoenix, AZ 85015. The handwritten label is addressed to "Mr. Boykin" XX50A North 28th Street (upper), Milwaukee, WI 53216 (Figure 3).



(Figure 3)

16.     On September 29, 2022, at approximately 10:00 a.m., case agents observed a grey Chevrolet Malibu with Wisconsin license plate ANN-2542 (Malibu) parked in front of XX50A North 28th Street.  Case agents reviewed DOT records and determined the Malibu was registered to Kevin J. Pulley (DOB XX/XX/1988) of XX50 North 28th Street, Milwaukee, WI, the same address but for the "A" Subject Parcel 2 was mailed to.  Case agents reviewed law enforcement databases which indicated Pulley has a criminal history which includes narcotics, cocaine and marijuana, and firearm offenses. Case agents also reviewed records which indicated Anthony Greenlee with cell phone 402-880-3706 had a WE Energy account for the address of XX50A North 28th Street, Milwaukee, WI since February 1, 2022.

17.     On September 30, 2022, Magistrate Judge William E. Duffin authorized a federal search warrant of Subject Parcel 2. Case agents executed the search warrant at the West Allis

9

Police Department. Inside Subject Parcel 2 was a separate brown cardboard box with a "Duralast" brake pad sticker affixed to it. Inside of the brown cardboard box was old brake pads and another black and yellow "Duralast Gold" cardboard box. Inside this box was hard "brick-like" substance wrapped inside of saran wrap. Subject Parcel 2 has "RR" written on the inner wrapping. The size of the substance was consistent to a kilogram amount of controlled substances. Investigators peeled off multiple layers of saran wrap and observed some of the saran wrap was layered in oil/grease. Based on my training experience, drug traffickers will often place substances within the narcotics in order to avoid any law enforcement canine detection. Once the layers were removed, case agents found a brick of a white substance with a number eight pressed into the brick. Case agents used the "TruNarc" narcotics testing device on the white substance from Subject Parcel 2, which indicated the substance as being fentanyl and weighed with the result of approximately one kilogram (Figure 4).



(Figure 4)

18.     Subject Parcel 2 was being mailed to XX50A N. 28th St. Milwaukee, WI, but had the same fictitious recipient listed as "Mr. Boykin" as Subject Parcel 1. During the prior surveillance on September 16, 2022, CRAWFORD was identified as the person who took

10

possession of Subject Parcel 1 from the front of XX16 North 14th Street, Milwaukee, WI 53209.

19.     USPIS Inspectors obtained video surveillance from the USPS located in Cashion, Arizona where Subject Parcel 2 was mailed. The video depicted a Hispanic male and female shipping Subject Parcel 2 to XX50A North 28th Street (upper), Milwaukee, WI 53216 (Figure 5).



(Figure 5)

20.     On October 4, 2022, case agents served a subpoena to Orbitel Communications pertaining to the IP address of 216.9.178.191, which was used in the mailing of Subject Parcel 1 and Subject Parcel 2. The 216.9.178.191 IP address had the customer identified as "Leonard BROOKSHIRE" at XX254 West Cowpath Road, Maricopa AZ 85138 and telephone number 406-261-2119.

**c. Subject Parcel 3**

21.     On October 12, 2022, Magistrate Judge Stephen C. Dries authorized a GPS tracking search warrant to be applied on a CRAWFORD's Traverse, which she used to pick up Subject Parcel 1.

22.     On October 13, 2022, case agents executed the search warrant and installed the GPS device on the Traverse while it was parked in the alley directly behind her residence of XX56

11

North 14th Street Milwaukee, Wisconsin. GPS data collected from this warrant, was consistent with CRAWFORD's involvement with the DTO.

23.     USPIS continued to monitor data related to USPS parcels suspected to be related to this investigation. USPIS located parcels shipped by the BROOKSHIRE drug trafficking organization (DTO) that were delivered and not intercepted by law enforcement.

24.     On October 12, 2022, at 1:37 p.m. parcel with tracking number 9570110579172285481848 (Subject Parcel 3) was mailed from Phoenix, Arizona to the same address Subject Parcel 1 was mailed, XX16 North 14th Street, Milwaukee, WI. Subject Parcel 3 weighed three ounces and the sender paid $39.10 to mail the parcel.  BROOKSHIRE's IP address of 216.9.178.191 was used to track the mailing of Subject Parcel 3.  Subject Parcel 3 was delivered on October 13, 2022, at 11:57 a.m.   GPS data from CRAWFORD's Traverse indicated it arrived and stopped at the address of XX16 North 14th Street, Milwaukee, WI on October 13, 2022, at 11:58 a.m., one minute after Subject Parcel 3 was delivered, and then departed the area.

### d.  Subject Parcel 4 - Arrest of Jacque S. HERNANDEZ

25.     On October 15, 2022, USPS seized parcel number 9570113639812287174011 (Subject Parcel 4) shipped from a USPS Office in Maricopa, Arizona and addressed to "Willie Boykin" of XX33 East Pleasant Street, Apt207 Milwaukee, WI 53202. (Figure 6).  A federal search warrant, authorized by Magistrate Judge Stephen C. Dries, was obtained, and executed on Subject Parcel 4.



(Figure 6)

26.     Inside Subject Parcel 4 was an additional USPS box that contained Styrofoam and paper packaging and two white Nike t-shirts. The two white Nike t-shirts contained a Tupperware container, which was wrapped in cellophane. Inside the Tupperware container were five individual plastic baggies, which contained fraudulent prescription M-30's (blue circular pills), which tested positive for the presence of fentanyl.  Case agents believe there to be approximately 1,000 doses per baggie and in total the fentanyl weighed approximately 566 grams (Figure 7).



(Figure 7)

27.     The recipient of the Subject Parcel 4 was identified as Jacque S. HERNANDEZ (DOB XX/XX/1978) at XX33 East Pleasant Street, Apt 207, Milwaukee, WI. Case agents also observed BROOKSHIRE's IP address of 216.9.178.191 way used to track the mailing of Subject Parcel 4.  Case agents also observed an additional IP address of 2600:1700:b0d0:2e90: was being used during the mailing of Subject Parcel 4.

28.     On October 15, 2022, case agents removed the fentanyl from Subject Parcel 4 and Subject Parcel 4 was delivered to XX33 East Pleasant Street, Milwaukee, Wisconsin.

HERNANDEZ accepted the parcel and was arrested by case agents. HERNANDEZ provided consent to search his apartment and cell phone and ultimately identified BROOKSHIRE as the source of fentanyl from Arizona.

29. Case agents conducted a Mirandized interview with HERNANDEZ. HERNANDEZ identified BROOKSHIRE as his High School friend. He advised that BROOKSHIRE resides in Arizona and is the person who is sending him the USPS parcels. HERNANDEZ confirmed that BROOKSHIRE was the person who sent him Subject Parcel 4 and BROOKSHIRE calling HERNANDEZ with the contact title of "Vee" with the Arizona area code.

30. HERNANDEZ advised he received three prior USPS parcels from BROOKSHIRE over the past few months. HERNANDEZ denied opening any of the USPS parcels. HERNANDEZ said that he would be contacted by BROOKSHIRE after the USPS parcel was delivered to his apartment and BROOKSHIRE give HERNANDEZ instructions to take the parcel to the Jetz gas station located at XX25 North Farwell Avenue, Milwaukee, WI. Once there, HERNANDEZ picked up an envelope with money behind the dumpster and left the parcel.

31. HERNANDEZ denied knowing who picked up the parcels. He recalled that during the delivery of one prior parcel, he met an unknown black male with dreads, wearing a face mask and driving a black Chevrolet SUV, possible a Traverse, at Tina's corner store located at XX18 North Franklin Street, Milwaukee, WI. HERNANDEZ stated that he was paid $200 for receiving and dropping off the parcels for BROOKSHIRE. HERNANDEZ admitted that this type of activity was consistent with something illegal being inside the USPS parcels. However, HERNANDEZ denied knowing what was actually inside the parcels. HERNANDEZ said that he assumed it was marijuana. Case agents advised HERNANDEZ that the size of the parcels and the amount of trouble having these parcels delivered was not consistent with marijuana. Case agents advised

14

HERNANDEZ that the USPS parcels contained large amounts of fentanyl. HERNANDEZ appeared to be upset by this and denied having any knowledge that the USPS parcels contained fentanyl.

32. HERNANDEZ provided verbal/written consent to search his cell phone and provided his passcode. HERNANDEZ confirmed that the contact's name of "Vee" having telephone number 406-261-2119 was the cell phone number for BROOKSHIRE. Case agents extracted the call logs between HERNANDEZ's number 414-581-8037 and BROOKSHIRE's number 406-261-2119. Case agents located 95 contacts with each other between September 23, 2021, and October 15, 2022, and text massage strings showing 168 instant messages between August 25, 2021, and October 15, 2022.

33. The following is an excerpt of some instant messaging between HERNANDEZ and BROOKSHIRE:

July 6, 2022
    BROOKSHIRE: Hit me when u get a chance
    HERNANDEZ: 1133 East Pleasant Street 53202 Apt 207
    HERNANDEZ: OK

July 8, 2022
    BROOKSHIRE: Ok hit you in 20mins
    BROOKSHIRE: Let me know when u want me to send buddy to see you
    HERNANDEZ: Let buddy know everything smooth
    BROOKSHIRE: I talked to him all good
    BROOKSHIRE: I'm happy for you bro!!! Love y'all

August 2, 2022
    HERNANDEZ: Call me when you get a chance

August 3, 2022
    BROOKSHIRE: I need u again lmk if wanna catch $150
    BROOKSHIRE: Hit u in 30mins bro

August 6, 2022
    HERNANDEZ: Call when you get up
    BROOKSHIRE: 2918 w oriole (**TARGET LOCATION**)

15

September 1, 2022
    HERNANDEZ: Call me ASAP. Bidness. Im going to sleep in a few wanted to run something past you

September 2, 2022
    HERNANDEZ: A man What happened with the whatchamacallit
    BROOKSHIRE: 414-275-3990 Darkness
    BROOKSHIRE: Big homie I'm on my way there I know it's short notice but can I use the room? LMK asap!

34.    On October 15, 2022, at 11:12 a.m., prior to the arrest of HERNANDEZ, there was a 23 minute 11 second outgoing call and a 10 second answered call at 11:35 a.m. between HERNADEZ and BROOKSHIRE's cell phone 406-261-2119.  On October 15, 2022, between 11:35 a.m. and 4:48 p.m., BROOKSHIRE's cell phone 406-261-2119 called HERNANDEZ ten times, after the arrest of HERNANDEZ.

35.    On October 17, 2022, at approximately 12:25 p.m. under the direction of case agents, HERNANDEZ agreed to place a one-party consent phone call to BROOKSHIRE using cell phone 406-261-2119.

36.    Upon HERNANDEZ calling 406-261-2119 a male party answered that HERNADEZ later identified as BROOKSHIRE.  BROOKSHIRE stated, "Yo." HERNANDEZ replied, "Yo, these mothers just let me out this morning...dog." BROOKSHIRE asked, "Ok, you went to who...?" HERNANDEZ advised BROOKSHIRE that he "just got to work...just got to work." BROOKSHIRE stated, "Alright, say no more...say no more. Everything good or what?" HERNANDEZ replied, "I just gotta see my PO (Probation Officer) Friday and see what's happening with her, other than that I don't know, wasn't no charges or nothing. They didn't..." BROOKSHIRE stated, "Ok, call me when you get off. Ummm, I'm gonna have...umm...gonna talk to um...you already know. You already good...you already know." The phone call ends. The audio was archived.  HERNANDEZ confirms this was BROOKSHIRE using cellular phone 406-261-

16

2119.

37.    On October 20, 2022, case agents obtained a federal order from Magistrate Judge Stephen C. Dries for a trap and trace pen register on BROOKSHIRE's known cell phone 406-261-2119. After the trap and trace order was executed, investigators observed that BROOKSHIRE was no longer using 406-261-2119 after the one-party consent phone call placed by HERNANDEZ. Based on cell phone analysis BROOKSHIRE's new cell phone number 305-205-7451 was identified.

38.    On December 7, 2022, Magistrate Judge William E. Duffin reviewed and authorized a federal search warrant for electronic surveillance of BROOKSHIRE's cell phone number 305-205-7451. On December 7, 2022, the search warrant was executed. Since the warrant was executed the electronic surveillance for BROOKSHIRE's cell phone number 305-205-7451 is consistently located at the known address of BROOKSHIRE, XX254 West Cowpath Road, Maricopa, Arizona.  XX254 West Cowpath Road, Maricopa, Arizona is also the same address where BROOKSHIRE's IP address 216.9.178.191 is registered.

**e.  Subject Parcels 5**

39.    On October 31, 2022, case agents were contacted by USPIS regarding information obtained that IP addresses 2600.1700:b0d0:2e90: and 108.76.222.210 were being used to track another parcel. Case agents obtained information from the USPIS that AT&T IP address 108.76.222.210 was used to track Subject Parcel 2, which contained a kilogram of fentanyl, while in transit from Arizona to Wisconsin.  Further, 2600.1700:b0d0:2e90: was used to track Subject Parcel 2 also and Subject Parcel 4, which contained over a half kilogram of fentanyl pills.   These IP addresses were tracking a USPS parcel number 9505512141272300655939 (Subject Parcel 5) from Arizona being mailed to X48 North 28th Street, Milwaukee, Wisconsin.  Case agents believed

Subject Parcel 5 to be associated with the BROOKSHIRE DTO given the IP address connection.

40.     Case agents received information the USPS parcel was attempted to be picked up at the Post Office on October 29, 2022, in Milwaukee, Wisconsin by a female (Figure 8) and male (Figure 9).

 

(Figure 8)                    (Figure 9)

41.     On October 31, 2022, case agents were able to intercept Subject Parcel 5, prior to being delivered to X48 North 28th Street, Milwaukee, Wisconsin (Figure 10). Case agents associated the address of X48 North 28th Street, Milwaukee, WI with Yvonne M. ECHOLS (DOB XX/XX/1979), through DTO records.



18

(Figure 10)

42.     Case agents reviewed law enforcement databases and public social media and learned that Yvonne ECHOLS is associated with members of the PULLEY family (Brandy PULLEY). Case agents are aware that Kevin PULLEY is associated with the seizure of Subject Parcel 2 which contained a kilogram of fentanyl related to the BROOKSHIRE DTO. Case agents obtained a photograph of Yvonne ECHOLS and later confirmed Yvonne ECHOLS was the female (Figure 8) attempting to retrieve Subject Parcel 5 from the Milwaukee Post Office.

43.     Case agents obtained a federal search warrant authorized by Magistrate Judge Stephen C. Dries.  Case agents executed the search warrant on Subject Parcel 5, which contained one kilo of fentanyl, having the same RR marking as Subject Parcel 2 packaging (Figure 11). Subject Parcel 5 also had a "006" stamp. Case agents used the "TruNarc" narcotics testing device on the white substance from Subject Parcel 5, which indicated the substance as being fentanyl and weighed with the result of approximately one kilogram.


(Figure 11)

**f.   Subject Parcel 6**

44.     Case agents located another parcel with connections to the BROOKSHIRE DTO.

19

On December 5, 2022, USPIS executed a federal search warrant authorized by Magistrate Judge William E. Duffin on USPS parcel 9505510579162334370753 (Subject Parcel 6). Subject Parcel 6 was coming from Phoenix, AZ to XX16 North 14th Street, Milwaukee, Wisconsin, the same address as Subject Parcel 1. BROOKSHIRE's IP address of 216.9.178.191 was used to track the mailing of Subject Parcel 6. The sender was listed as "Eugene ADAMS" of XX820 South 44th Street, Apt 1224 Phoenix, AZ 85044 to "Courtney Adams" of XX16 North 14th Street, Milwaukee, WI 53209 (Figure 12).



(Figure 12)

45.     Upon executing the search warrant, case agents located a plastic baggie containing green circular pills with the imprint K/8, fraudulent Oxycodone (Figure 13). Case agents tested the pills using Nark II #33, which tested positive for the presence of fentanyl. The total weight of the fentanyl was approximately 15 grams.



(Figure 13)

46.     On December 5, 2022, Case agents coordinated with USPIS to have Subject Parcel 6 scanned into the USPS system as "delivered" to XX16 North 14th Street, Milwaukee, Wisconsin, after the USPS carrier delivered the regular mail to the surrounding neighborhood of XX16 North 14th Street, Milwaukee, Wisconsin. Case agents set up surveillance around the residence of XX16 North 14th Street, Milwaukee, Wisconsin.

47.     At approximately 10:28 a.m. the USPS carrier delivered the mail to the address of XX16 North 14th Street, Milwaukee, Wisconsin and continued with his mail route. At approximately 10:30 a.m. USPIS entered the Subject Parcel 6 as being delivered in the USPS database. At approximately 10:53 a.m. USPIS advised that BROOKSHIRE's IP address 216.9.178.191 in Arizona queried Subject Parcel 6 and confirmed it had been delivered in their database. At approximately 10:55 a.m. case agents observed a black female, later identified as Brittany BREWER (DOB XX/XX/1991), exit the front door of XX16 North 14th Street, Milwaukee, Wisconsin.  BREWER was speaking to someone on her cell phone and appeared to be looking for Subject Parcel 6.  BREWER checked all sides of the porch and the grass area around the porch before going back inside the residence.

48.     At approximately 10:58 a.m. BREWER walked across the street and checked the porch across from XX16 North 14th Street, Milwaukee, Wisconsin. She walked back across the street and into XX6 North 14th Street, Milwaukee, Wisconsin again.

49.     At approximately 11:00 a.m. BREWER exited the front door and was carrying a male toddler (Figure 14). She accessed a tan 2003 Honda Civic with Wisconsin license plate 302-ZCP.  Case agents reviewed DOT records and determined the Honda is registered to Sinclair Brewer (DOB XX/XX.1956) of XX29 North 41st Street Milwaukee, Wisconsin.  Case agents

21

followed BREWER to the area of North 15th Street and West Hauser Avenue, Milwaukee, WI. There BREWER pulled up to and met with the USPS carrier. After a brief conversation BREWER returned to XX16 North 14th Street, Milwaukee, Wisconsin, and the USPS Post Office truck followed her to the address, where they again spoke. A short time later the USPS Delivery Truck departed the area and BREWER went back into the residence.



(Figure 14)

50.     USPIS later obtained a recorded call placed on December 5, 2022, where a female identified herself as "Courtney."  Subject Parcel 6 was being mailed to "Courtney Adams."  The female caller filed a complaint regarding Subject Parcel 6, which case agents knew contained the fentanyl/fraudulent Oxycodone. This female called advised that she confronted the carrier about the missing parcel and said that he denied delivering Subject Parcel 6.  The female caller stated she did not observe him deliver a parcel while on her porch. Case agents know from surveillance and the investigation, this was the interaction BREWER had with the carrier, which is consistent with the female caller being BREWER.

51.     USPIS obtained video surveillance from the Phoenix, Arizona Post Office from November 30, 2022, from when Subject Parcel 6 was mailed to Milwaukee, Wisconsin. The video surveillance depicted BROOKSHIRE mailing Subject Parcel 6 (Figure 15).

22



(Fgiure 15)

**g. Subject Parcel 7 and Subject Parcel 8**

52.     Prior to this surveillance case agents obtained records from WE Energies.  Those records indicated that a BREWER has an open and active account at the address of XX16 North 14th Street, Milwaukee, Wisconsin since May 4, 2021, and a telephone number of 414-303-9944 is associated with the account. Case agents review a law enforcement database which indicated between February 12, 2019, and February 19, 2020, BREWER has a prior address of XX221 North 51st Avenue, Apt 2171, GLENDALE, AZ 85306-2555, in Maricopa County.

53.     As part of the investigation into the DTO, case agents reviewed USPS databases which indicated BREWER called a USPS customer service on June 21, 2021, for parcel tracking number EJ805943480US (Subject Parcel 7).  At the time of the inquiry, BREWER provided

23

telephone number 414-737-1911 and email brittanybrewer0522@icloud.com.

54.     Subject Parcel 7 was mailed from XX820 North 44th Street, Apt 1239, Phoenix, AZ 85044, the same senders address for Subject Parcels 3 and 6, all with different apartment numbers. Further Subject Parcel 7 was being mailed to XX16 North 14th Street, Milwaukee, Wisconsin, the same receiving address for Subject Parcels 1, 3 and 6. Subject Parcel 7 weighed five ounces and entered the mail stream in Tempe, Arizona. This same return address, XX820 North 44th Street, Phoenix, AZ 85044, was also used with another parcel with tracking number 9505510579162251361643 (Subject Parcel 8), going to a target address at XX50A North 28th Street, Milwaukee, Wisconsin on September 8, 2022. BROOKSHIRE's IP address of 216.9.178.191 was used to query the mailing status of Subject Parcel 8.

### h.  Subject Parcel 9

55.     On December 29, 2022, case agents were contacted by USPIS regarding information obtained that BROOKSHIRE's IP address of 216.9.178.191 was used to track another parcel with tracking number 9505512594732362668035 (Subject Parcel 9). Subject Parcel 9 was mailed from Mesa, Arizona and was being sent to "Michelle Donley" at XX19 West Silver Spring Drive, Apt 101, Milwaukee, WI 53218.

56.     On January 3, 2023, Magistrate Judge Nancy Joseph authorized a federal search warrant of Subject Parcel 9. Case agents executed the search warrant and inside Subject Parcel 9 was a kilogram of fentanyl, having the same "RR" marking on the packaging as Subject Parcel 2 and Subject Parcel 5 (Figure 16). USPIS used the "TruNarc" narcotics testing device on the white substance from Subject Parcel 9, which indicated the substance as being fentanyl and weighed with the result of approximately one kilogram. Case agents learned that BROOKSHIRE's IP address of 216.9.178.191 was used to track the movements of Subject Parcel 9 after it was seized

24

also.



(Figure 16)

## B. Summary of the BROOKSHIRE DTO's Parcels

57.     Based on the investigation into the DTO, case agents reviewed USPS databases

regarding parcels connected the BROOKSHIRE DTO. Case agents located the 15 parcels in which

BROOKSHIRE's IP address of 216.9.178.191 was used to query the mailing status between

August 13, 2022, and December 28, 2022:

| Dates Mailed | Tracking Number | Delivery Address |
|---|---|---|
| August 13, 2022 | EI100996433US | XX25 North 91st Street, Milwaukee, WI 53222 |
| August 23, 2022 | 9505526557112235453412 | XX50A North 28th Street, Milwaukee, WI 53216 |
| August 31, 2022 | EI064850773US | XX33 East Pleasant Street, APT 207, Milwaukee, WI 53202 |
| September 6, 2022 | EI064851442US | XX16 North 14th Street, Milwaukee, WI 53209 |
| September 8, 2022 | 9505510579162251361643 | XX50A North 28th Street, Milwaukee, WI 53216 (Subject Parcel 8) |
| September 15, 2022 | EI387224872US | XX16 North 14th Street, Milwaukee, WI 53209 (Subject Parcel 1) |
| September 23, 2022 | I361764274US | XX16 North 14th Street, Milwaukee, WI 53209 |
| September 28, 2022 | 9505511037712271424604 | XX50A North 28th Street, Milwaukee, WI 53216 (Subject Parcel 2) |
| October 4, 2022 | EI431468528US | XX25 North 91st Street, Milwaukee, WI 53222 |
| October 12, 2022 | 9570110579172285481848 | XX16 North 14th Street, Milwaukee, WI 53209 (Subject Parcel 3) |
| October 14, 2022 | 9570113639812287174011 | XX33 East Pleasant Street, APT 207, Milwaukee, WI 53202 (Subject Parcel 4) |
| November 10, 2022 | 9505512691532314019722 | XX16 North 14th Street, Milwaukee, WI 53209 |
| November 19, 2022, | 9505512593972323384104 | XX17 North 14th Street, Milwaukee, WI 53209 |
| November 30, 2022, | 9505510579162334370753 | XX16 North 14th Street, Milwaukee, WI 53209 (Subject Parcel 6) |

25

| December 28, 2022, | 9505512594732362668035 | XX19 West Silver Spring Drive, Apt 101, Milwaukee, WI 53218 (Subject Parcel 9) |

58.     Case agents also located the two parcels in which 3218 West Oriole Drive

Milwaukee, WI 53209-4127 IP address of 108.76.222.210 (Wi-Fi) was used during the mailing:

| Dates Mailed | Tracking Number | Delivery Address |
|---|---|---|
| September 28, 2022 | 9505511037712271424604 | XX50A North 28th Street, Milwaukee, WI 53216 (Subject Parcel 2) |
| October 27, 2022 | 9505512141272300655939 | X48 North 28th Street, Milwaukee, WI 53208 (Subject Parcel 5) |

59.     Case agents also located the five parcels in which 3218 West Oriole Drive

Milwaukee, WI 53209-4127 IP address of 2600.1700:b0d0:2e90: (Wired) was used during the

mailing:

| Dates Mailed | Tracking Number | Delivery Address |
|---|---|---|
| August 4, 2022 | 9505512141272216636947 | XX50A North 28th Street, Milwaukee, WI 53216 |
| September 22, 2022 | 9505511805122265604456 | XX00 West Appleton Avenue, Apt 7 Milwaukee, WI 53225 |
| September 28, 2022 | 9505511037712271424604 | XX50A North 28th Street, Milwaukee, WI 53216 (Subject Parcel 2) |
| October 14, 2022 | 9570113639812287174011 | XX33 East Pleasant Street, APT 207, Milwaukee, WI 53202 (Subject Parcel 4) |
| October 27, 2022 | 9505512141272300655939 | X48 North 28th Street, Milwaukee, WI 53208 (Subject Parcel 5) |

60.     Following the identification of the above listed parcels associated with

BROOKSHIRE's IP address of 216.9.178.191 and 3218 West Oriole Drive Milwaukee, WI

53209-4127 IP address of 108.76.222.210 (Wi-Fi) and 2600.1700:b0d0:2e90: (Wired), case agents

reviewed additional USPS database.  Case agents determined the BROOKSHIRE DTO sent the

first parcel consistent with Postal-based drug trafficking on November 8, 2021, to XX50A North

28th Street, Milwaukee, WI 53216.  Case agents were able to connect the following addresses to

parcels consistent with Postal based drug trafficking being received from the BROOKSHIRE

DTO:

| Address | Subject Parcels Received | Parcels |
|---|---|---|

26

| | | |
|---|---|---|
| XX33 East Pleasant Street, APT 207, Milwaukee, WI 53202 | Subject Parcel 4 | 7 |
| XX50A North 28th Street, Milwaukee, WI 53216 | Subject Parcels 2 and 8 | 5 |
| 3954 North 24th Place, Milwaukee, WI 53206 | | 6 |
| XX25 North 91st Street, Milwaukee, WI 53222 | | 2 |
| XX16 North 14th Street, Milwaukee, WI 53209 | Subject Parcels 1, 3, 6, and 7 | 8 |
| X48 North 28th Street, Milwaukee, WI 53208 | Subject Parcel 5 | 1 |
| XX19 West Silver Spring Drive, Apt 101, Milwaukee, WI 53218 | Subject Parcel 9 | 3 |
| XX00 West Appleton Avenue, Apt 7 Milwaukee, WI 53225 | | 2 |
| | | **Total: 34** |

## C. BROOKSHIRE's Arizona Addresses

61.     Case agents have been in contact with Detective Jose Angulo of the Chandler Police Department in Arizona regarding the BROOKSHIRE DTO. On October 15, 2022, Detective Angulo checked the address of XX571 West Courtney Drive, Maricopa, Arizona 85138, which case agents determined was associated with BROOKSHIRE from review of law enforcement databases. Detective Angulo observed a grey 2010 Honda Odyssey with Arizona license plate 1SA8SH registered to Laura Mae CASTANEDA (DOB XX/XX/1985) of XX571 West Courtney Drive, Maricpoa, Arizona. Also, Detective Angulo observed a blue 2016 Kia Sportage with Arizona license plate DSA8B1A registered to Michael Anthony BENAVIDEZ (DOB XX/XX/198) of XX991 West Southampton Road, Surprise, Arizona 85374 parked in the driveway of XX571 West Courtney Drive, Maricpoa, Arizona. Detective Angulo provided an Arizona DOT photograph of Laura Mae CASTANEDA.   Laura Mae CASTANEDA resembled the Hispanic female (from Figure 5) who was present at the Arizona Post Office when Subject Parcel 2, the kilogram of fentanyl, was mailed.

62.     Also on October 15, 2022, Detective Angulo also checked the address of XX254 West Cowpath Road, Maricopa, Arizona 85138, the location of IP address 216.9.178.191 used to track Subject Parcel 1, Subject Parcel 2, Subject Parcel 3, Subject Parcel 4, Subject Parcel 6,

27

Subject Parcel 8, and other USPS parcels not intercepted/surveilled by law enforcement. Detective Angulo observed a white Infiniti SUV with no front plate backed in the driveway. Detective Angulo also observed a black 2007 Lexus ES 4DR bearing Arizona license plate VWA4ZK (Lexus) parked in front of the residence at XX254 West Cowpath Road, Maricopa, Arizona. The Lexus was registered to Leonard V. BROOKSHIRE (DOB XX/XX/1978) of XX254 West Cowpath Road, Maricopa, Arizona.

63.    Case agents know from USPS video surveillance in Laveen, Arizona that BROOKSHIRE used a black Lexus 4DR to drive the USPS and mail Subject Parcel 1 to XX16 North 14th Street Milwaukee, WI. Subject Parcel 1 that was ultimately picked up at XX16 North 14th Street Milwaukee, Wisconsin by CRAWFORD.

64.    Detective Angulo also identified April L. JOHNSON (DOB XX/XX/1979) of XX515 West Bravo Driver, Maricopa, Arizona as being associated with the address of XX254 West Cowpath Road, Maricopa, Arizona. Case agents were aware from law enforcement databases that April JOHNSON is the mother of BROOKSHIRE's child/children and JOHNSON's family resides in Milwaukee, Wisconsin.

**D. Identification and Surveillance of 3218 West Oriole Drive Milwaukee, WI 53209 (TARGET LOCATION)**

65.    On November 28, 2022, case agents obtained a subpoena for AT&T regarding the records related to IP address 108.76.222.210, which was used to track Subject Parcel 5 and 2600.1700:b0d0:2e90, which was used to track to Subject Parcels 4 and 5. AT&T provided that ID address 108.76.222.210 was related to a Wi-Fi connection and 2600.1700:b0d0:2e90: was an IP address for a device connected through hard wired internet connection. AT&T provided the subscriber for both 108.76.222.210 (AT&T IPV4 Wi-Fi) and 2600.1700:b0d0:2e90: (AT&T IPV6 Wired) as Tensie JACKSON of 3218 West Oriole Drive Milwaukee, WI 53209-4127 (**TARGET**

28

**LOCATION**), with account number 113972554. Tensie JACKSON account was created on October 4, 2011, and has a member ID as tjackson9804@att.net and listed email TJACKSON9804@ATT.NET. USPS databases show IP address 108.76.222.210 was related to a Wi-Fi connection and 2600.1700:b0d0:2e90: was related to a wired connection.

66.     Case agents reviewed WE Energies records for 3218 West Oriole Drive, Milwaukee, WI (**TARGET LOCATION**) and there is an account registered to Luis ALEXANDER since March 8, 1990. Case agents reviewed law enforcement databases which indicated Jerry W ALEXANDER (DOB XX/XX/1971) and Jeremy W. ALEXANDER (DOB XX/XX/1998) are also associated with the address of 3218 West Oriole Drive, Milwaukee, WI.

67.     On December 2, 2022, case agents were conducting surveillance at 3218 West Oriole Drive, Milwaukee, Wisconsin (**TARGET LOCATION**) where the AT&T IP address 108.76.222.210 (AT&T IPV4 Wi-Fi) and 2600.1700:b0d0:2e90: (AT&T IPV6 Wired) is registered and was being used to track the BROOKSHIRE DTO Subject Parcels 2, 4 and 5.

68.     While conducting surveillance on December 2, 2022, at 3218 West Oriole Drive, Milwaukee, Wisconsin, case agents observed a dark blue 2005 Acura TL with Wisconsin license plate ARX-5650, which is registered to Wonderboys LLC. Case agents conducted an open social media search the Wonderboys LLC and found it is a Wisconsin Domestic Limited-Liability company filed on May 24, 2022. The listed address for Wonderboys LLC is 3218 West Oriole Drive, Milwaukee, Wisconsin (**TARGET LOCATION**). Case agents also located on a law enforcement database that Zheniah JACKSON and Jerry ALEXANDER are associated with Wonderboys LLC.

69.     During surveillance on December 2, 2022, case agents observed a woman, identified as Tensie JACKSON by case agents, exit the front door and throw a bag into the garbage.

29

Case agents also observed a brown 2003 Chevrolet Impala with Wisconsin license plate ANF-3605 parked in the driveway of the **TARGET LOCATION**. Case agents reviewed records and determined the Impala is registered to Tensie JACKSON (DOB XX/XX/1969) of 3218 West Oriole Drive, Milwaukee, Wisconsin (**TARGET LOCATION**).

70.     On December 26, 2022, at approximately 10:45 a.m. case agents were conducting surveillance at 3218 West Oriole Drive, Milwaukee, Wisconsin (**TARGET LOCATION**) where IP address 108.76.222.210 (AT&T IPV4 Wi-Fi) and 2600.1700:b0d0:2e90: (AT&T IPV6 Wired) is registered to Tensie JACKSON. Case agents observed parked in the driveway the dark blue 2005 Acura TL with Wisconsin license plate ARX-5650, registered to Wonderboys LLC, which has a registered agent of Zheniah JACKSON, that was also observed on December 2, 2022, at 3218 West Oriole Drive, Milwaukee, Wisconsin (**TARGET LOCATION**). Also parked in the driveway case agents observed a black 2017 Volkswagen Sedan with Wisconsin license plate ARE-7442. Case agents reviewed DOT records, which indicated the Volkswagen was registered to Zheniah L. JACKSON (DOB XX/XX1998) of 3218 West Oriole Drive, Milwaukee, Wisconsin (**TARGET LOCATION**). Case agents also observed Tensie JACKSON's brown 2003 Chevrolet Impala with Wisconsin license plate ANF-3605 in the driveway. Case agents also observed a Gray Nissan Rogue with Wisconsin Brewer license plate MENMY2. Case agents reviewed DOT record, which indicted the Rogue was also registered to Tensie R. JACKSON (DOB XX/XX/1969) of 3218 West Oriole Drive, Milwaukee, Wisconsin.

71.     At approximately 10:50 a.m. case agents observed Tensie JACKSON and Jeremiah Z. JACKSON (DOB XX/XX/2004), exit the front door of 3218 West Oriole Drive, Milwaukee, Wisconsin (**TARGET LOCATION**). Jeremiah JACKSON was identified through DTO photos and was determined to be the brother of Zheniah JACKSON after a review of law enforcement

30

databased. Jeremiah JACKSON started and moved the black 2017 Volkswagen Sedan with Wisconsin license plate ARE-7442 out of the driveway and parked it onto the street. Both Jeremiah JACKSON and Tensie JACKSON entered the brown 2003 Chevrolet Impala with Wisconsin license plate ANF-3605. Jeremiah JACKSON was driving the Impala. Jeremiah JACKSON and Tensie JACKSON then departed the area. Case agents followed the brown 2003 Chevrolet Impala to the Pick-n-Save at 1735 West Silver Spring Drive, Glendale, Wisconsin where both Tensie JACKSON and Jeremiah JACKSON were observed coming and going from the Pick-n-Save.

## III.    TECHINICAL BACKGROUND

72.    As described above and in Attachment B, this application seeks permission to search for records that might be found on the **TARGET LOCATION** and the **TARGET VEHICLES**, in whatever form they are found. One form in which the records might be found is data stored on a cellular telephone or computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

73.    Based on my training and experience, I know an IP address is an unique string of characters that identifies a connection to a device network that uses the IP for communication. An IP address serves two main functions: network interface identification and location addressing. I know that a modem which connects to the internet has an outward-facing IP address, which is a unique location on the internet. I know a computer/device may be connected to the modem and/or a router through the use of a "hard-line" wire and that the modem/router is able to determine how a particular computer/device is connected to it. A modem/router would be able to communicate this type of connection back to the internet. In addition to a "hard-line" connection, an electronic device could be connected to a modem/router

31

through Wi-Fi without the use of "wired" connection. Electronic devices, like cellphones, computers, and tablets, can connect to the internet through the modem located at the premises which shows the IP address associated with the premises, but can be located in different buildings or vehicles on the premises. For example, the electronic device might be connected to the internet of the IP address associated with a residence, but it can be located in a vehicle on the premises.

a. *Probable cause.* I submit that if an electronic device, i.e., computer, cellular telephone, or electronic storage medium, is found at the **TARGET LOCATION** and the **TARGET VEHICLES**, there is probable cause to believe records associated with the DTO's activities will be stored on the same, for at least the following reasons:

- Based on my knowledge, training, and experience, I know that this DTO frequently uses electronic devices connected to IP addresses to track parcel containing controlled substances through the USPS. Further, through surveillance, I know that the DTO will communicate with each other when the parcel containing controlled substances are delivered and retrieved by members of the DTO.

- I also know, based on my knowledge, training, and experience, that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage

32

medium until it is overwritten by new data.

- Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

- Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

- Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

b. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how such electronic devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the **TARGET LOCATION** and the **TARGET VEHICLES**

33

because:

- Data on the electronic device, i.e., computer, cellular telephone, or storage medium, can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

- As explained herein, information stored within an electronic device, i.e., computer, cellular telephone, and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of

34

session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating, or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of

35

additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

- A person with appropriate familiarity with how a cellular telephone or computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

- The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a cellular telephone or computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore,

36

contextual information necessary to understand other evidence also falls within the scope of the warrant.

- Further, in finding evidence of how a cellular telephone or computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

- I know that when an individual uses a cellular telephone or computer to operate a website that is used for illegal conduct, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The cellular telephone or computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone or computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a cellular telephone or computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

c. *Necessity of seizing or copying entire electronic device, i.e., computers, cellular telephones, or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical

37

storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of cellular telephone or computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following: (i) The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site; (ii) Technical requirements. Cellular telephone and computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and

38

knowledge; and (iii) <u>Variety of forms of electronic media</u>. Records sought under this warrant could be stored in a variety of storage media formats that may require off- site reviewing with specialized forensic tools.

    d.  *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying electronic devices, i.e., cellular telephones, computers, and storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

    e.  Because multiple people share the **TARGET LOCATION** and the **TARGET VEHICLES**, it is possible that the **TARGET LOCATION** and the **TARGET VEHICLES** will contain electronic devices, i.e., cellular telephones, computers, or storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

    f.  *Unlocking Apple brand devices:* I know based on my training and experience, as well as from information found in publicly available materials including those published by Apple, that Apple devices are used by many people in the United States, and that some models of Apple devices such as iPhones and iPads offer their users the ability to unlock the device via the use of a fingerprint or thumbprint (collectively, "fingerprint")

39

or facial recognition in lieu of a numeric or alphanumeric passcode or password. These features are called Touch ID and Face ID, respectively. If a user enables Touch ID on a given Apple device, he or she can register up to 5 fingerprints that can be used to unlock that device. The user can then use any of the registered fingerprints to unlock the device by pressing the relevant finger(s) to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) at the bottom center of the front of the device. In my training and experience, users of Apple devices that offer Touch ID often enable it because it is considered to be a more convenient way to unlock the device than by entering a numeric or alphanumeric passcode or password, as well as a more secure way to protect the device's contents. This is particularly true when the user(s) of the device are engaged in criminal activities and thus have a heightened concern about securing the contents of the device. In some circumstances, a fingerprint cannot be used to unlock a device that has Touch ID enabled, and a passcode or password must be used instead. These circumstances include: (1) when more than 48 hours has passed since the last time the device was unlocked and (2) when the device has not been unlocked via Touch ID in 8 hours and the passcode or password has not been entered in the last 6 days. Thus, in the event law enforcement encounters a locked Apple device, the opportunity to unlock the device via Touch ID exists only for a short time. Touch ID also will not work to unlock the device if (1) the device has been turned off or restarted; (2) the device has received a remote lock command; and (3) five unsuccessful attempts to unlock the device via Touch ID are made. If Touch ID enabled Apple devices are found during a search of the **TARGET LOCATION** and the **TARGET VEHICLES**, the passcode or password that would unlock such devices are presently unknown to law enforcement. Thus, it will likely be necessary

40

to press the finger(s) of the user(s) of any Apple device(s) found during the search of the **TARGET LOCATION** and the **TARGET VEHICLES** to the device's Touch ID sensor in an attempt to unlock the device for the purpose of executing the search authorized by this warrant. Attempting to unlock the relevant Apple device(s) via Touch ID with the use of the fingerprints of the user(s) is necessary because the government may not otherwise be able to access the data contained on those devices for the purpose of executing the search authorized by this warrant. In my training and experience, the person who is in possession of a device or has the device among his or her belongings at the time the device is found is likely a user of the device. However, in my training and experience, that person may not be the only user of the device whose fingerprints are among those that will unlock the device via Touch ID, and it is also possible that the person in whose possession the device is found is not actually a user of that device at all. Furthermore, in my training and experience, I know that in some cases it may not be possible to know with certainty who is the user of a given device, such as if the device is found in a common area of a premises without any identifying information on the exterior of the device. Thus, it will likely be necessary for law enforcement to have the ability to require any occupant of the premises to press their finger(s) against the Touch ID sensor of the locked Apple device(s) found during the search of the **TARGET LOCATION** and the **TARGET VEHICLES** in order to attempt to identify the device's user(s) and unlock the device(s) via Touch ID. Although I do not know which of a given user's 10 fingerprints is capable of unlocking a particular device, based on my training and experience I know that it is common for a user to unlock a Touch ID-enabled Apple device via the fingerprints on thumbs or index fingers. In the event that law enforcement is unable to unlock the Apple device(s) found in the **TARGET**

41

**LOCATION** and the **TARGET VEHICLES** as described above within the five attempts permitted by Touch ID, this will simply result in the device requiring the entry of a password or passcode before it can be unlocked. Due to the foregoing, I request that the Court authorize law enforcement to press the fingers (including thumbs) of individuals found at the **TARGET LOCATION** and the **TARGET VEHICLES** to the Touch ID sensor of the Apple brand device(s), such as an iPhone or iPad, found at the **TARGET LOCATION** and the **TARGET VEHICLES** for the purpose of attempting to unlock the device via Touch ID in order to search the contents as authorized by this warrant.

## IV. CONCLUSION

74.     Based on the above information, I submit that there is probable cause to believe that between April, 2022 and December, 2022, BROOKSHIRE, HERNANDEZ, ECHOLS and BREWER and others known and unknown to case agents, possessed with intent to distribute and distributed a controlled substance, that is fentanyl, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A) and Unlawful Use of a Communication Facility (including the mails) to Facilitate the Distribution of a Controlled Substance, in violation of Title 21, United States Code Sections 843(b). I further believe that there is probable to believe that located at and in the **TARGET LOCATION** and **the TARGET VEHICLES**, further described in Attachments A, there is evidence of these crimes, all of which is detailed more specifically in Attachment B, that a warrant issue authorizing the search of the same.

42

## ATTACHMENT A1

### Property to Be Searched

The property to be searched pursuant to this warrant is **3218 West Oriole Drive, Milwaukee, WI (TARGET LOCATION),** a single-family, two story, cape cod style residence. The exterior is described as having cream brick lower siding, white vinyl upper siding, with white window trim and a white metal gate door on the front of the residence. The numbers **"3218"** are affixed brick siding to the east of the front door, in a horizontal fashion in black numbers on white ceramic tiles.



43

**ATTACHMENT A2**

**Property to Be Searched**

The properties to be searched pursuant to this warrant are (1) 2003 Chevrolet Impala with Wisconsin license plate ANF-3605; (2) dark blue 2005 Acura TL with Wisconsin license plate ARX-5650; (3) black 2017 Volkswagen Sedan with Wisconsin license plate ARE-7442**;** and (4) Gray Nissan Rouge with Wisconsin Brewer license plate MENMY2 (collectively "**TARGET VEHICLES**").

44

**<u>ATTACHMENT B</u>**

**ITEMS TO BE SEIZED**

All records, information, and items relating to violations of 21 U.S.C. §§ 841(a)(1), 843 and 846, between November 1, 2021, to present including:

    a.  Evidence of the crime described above;

    b.  Tools associated with drug trafficking, to include plastic bags, scales, duffel bags, and money counters;

    a.  Preparatory steps taken in furtherance of that crime;

    b.  Evidence of the existence, scope, or overt acts in furtherance of a conspiracy;

    c.  Evidence of motive, intent, or knowledge of the crime described above;

    d.  Evidence of the location, whereabouts, and patterns of travel of members of the BROOKSHIRE DTO;

    e.  All bank records, checks, credit card bills, account information, and other financial records;

    f.  Financial records, documents, statements, or other evidence of control of bank or other financial accounts and investment funds;

    g.  Lists of drug customers and related identifying information;

    h.  Types, amounts, and prices of drugs trafficked, as well as dated, places, and amounts of specific transactions;

    i.  Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    j.  Indicia of residency;

    k.  Safes, vaults, or lock boxes used to store proceeds or records from these crimes;

    l.  U.S. Currency;

m. Evidence indicating how and when electronic devices were accessed or used, to determine the chronological and geographic context of access, use, and events relating to the crime under investigation; and

n. Cellular telephones and all electronic storage areas on the device including stored telephone numbers, recently called numbers list, text messages, digital audio and or video recordings, pictures, settings, and any other user defined settings and/ or data.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

During the execution of the search of the locations or person described in Attachments A, law enforcement personnel are authorized (1) to press the fingers (including thumbs) of any individuals found at the **TARGET LOCATION** or the **TARGET VEHICLES** to the fingerprint sensor ("Touch ID") and (2) to present the face of any individuals found at the **TARGET LOCATION** or the **TARGET VEHICLES** to the facial recognition sensor, such as a camera, ("Face ID") of the device found at the Target Location for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

Note: The government will attempt to retrieve and copy all data from computers found at the location to be searched without physically removing said computers. If occupants of the premises are unwilling to cooperate with the agent(s) regarding the operation of an on-site computer system(s), and/or it appears that there is/are data security devices involved, or the computer system utilizes unusual or proprietary equipment, the computer system may be seized,

46

along with the proprietary equipment. If the agent determines that the volume of material found on the premises is voluminous in size, and/or for any technical reason the agent(s) on the scene cannot search for or image/copy the information found on the premises, the computer system(s) and media may be seized.

47